Good morning. May it please the court. My name is Glenn Cantor. I represent the appellant. I'd like to reserve three minutes for rebuttal. Your Honors, in the district court decision, its preamble, the court stated, under the de novo review standards, the court independently considers the evidence, find facts, determines how the policy applies, just as it would resolve any other breach of contract claim. Your Honors, that cannot be the law. It can't be the law that any other contract claim is resolved the way an ERISA claim is resolved. In ERISA claims, when a bench trial occurs, there's no witnesses. Obviously, no jury. It's a bench trial, but there are no witnesses. The plaintiff does not get to come to court and tell her story. With only rare circumstances, the court is to look at a closed record and make determinations. This court's, in my mind, failure to understand the difference between an ERISA trial and any other contract claim impacted its decision. Let me ask you this. This kind of struck me as an interesting question when I was looking at this record. How do you perceive de novo review in this context? We perceive... What is de novo? What does de novo review mean here? De novo review, in this context, means the courts review the case. As I'll get into in a moment, this court, in the Harlock decision, clearly stated that only defenses to a claim raised during the administrative process could be raised at trial by the insurer. That certainly raises the question, well, can the district court raise arguments not raised by the insurer? Our argument is no. That would be completely unfair if the insurer, the claimant, didn't have the opportunity to address arguments or defenses, because they were never raised by the insurance company. The insurance company is prohibited from raising them because they'd be sandbagged. If it's unfair for the insurance company to do it, how is it any more fair for the court to do it? Along the same line, let me just take this one little step further and then I didn't really mean to interrupt your argument, but one of the issues is the district court found that your client was not sort of a credible... Her story was not credible about the amount of pain that she was experiencing. Yes. There was not objective evidence. Whatever her pain was, whatever her problems were, her and he didn't... The district judge didn't really believe her. Now, you argued that, well, Lincoln Life didn't really raise credibility as one of the grounds for denying her claim, but if you look at the... Let me ask you this. If you look at the record, the independent medical examiner that examined her, I forget what his name is. Lachos, Dr. Lachos. It's a she. Dr. Lachos. She states... I'm sorry. She states at one point, if I get this correctly, that the complaints that she was essentially stating that one of her complaints were not well she herself suggested that Ms. Collier was not... Her pain was not really documented in the record. There's a... I'll have to get it out for you, but to what extent did Lincoln raise the whole issue of credibility or how persuasive she was in the administrative process? I would say not at all other than to rely upon Dr. Lachos' findings. With due respect, I would vigorously contest that Dr. Lachos didn't find her credible. She said she had some inconsistencies, but if I could read from her report, based on my evaluation of the notes of Dr. Harounian and Dr. Cohen, who were treating doctors, it appears that there are not, not significant differences in the examination, and upon my review of the medical records, I did not view any observation of behaviors that were inconsistent with my exam. Further, there was no significant overreaction during the examination. Further, during my evaluation of the claimant, the claimant gave good effort during the examination. She does not appear to overreact or grimace during the examination, but she does have a number of areas of tenors noted. Lastly, her physicians have also provided restrictions and limitations at which she'd be able to work, and it's my professional opinion that these restrictions, as well as the restrictions that I have imposed, are very similar and would allow her to be functional at some job. This is supposed to be an ONOC, but at some job, within the restrictions outlined. So, I respectfully disagree that she overall disagreed with the credibility, or found credibility problems, with Ms. Collier. If you take the overall number of her report, she considers some inconsistencies for the credibility, but then she says, I find restrictions. Well, let me ask you this. So, let's assume that there is some, if you look at the hard medical record, there's some suggestion that she might have been overstating her condition, but Lincoln doesn't really raise that as a basis for denying benefits. Is it okay for the district judge on de novo review to take a look at, to take a further look at that? I would argue no, because in ERISA, the full and fair review and the opportunity to rebut the findings of the insurance company and the basis of the denial. Lincoln never raises it. How is the insured supposed to know that Lincoln is questioning her credibility if it doesn't tell her? How is she supposed to put on her case when she shows up at trial and the judge says, well, I've decided you're not credible. And if we think the clear error comes in. Let me just ask you something, Mr. Cantor. In Harlech, to which you made reference, the Ninth Circuit opinion here in 2012, the court held that it will not allow an ERISA plan administrator to assert a reason for denial of benefits that it had not given during the administrative process. But, and your point has been that your client was not given that opportunity, but that is with respect to preventing the insurer from sandbagging, it doesn't limit the district court's de novo review. And in fact, the record reflects that your client was provided with the report of Dr. Katrina Velauskas. Oh, yes. Before the district court, she absolutely was given the opportunity to respond. Yes, and your honor, and she did. And it's a de novo review, and de novo review means a district judge in a bench trial is free to make determinations he or she finds credible or not. Not totally, for your honor. Why not? Well, I guess to get Judge Pius's point, a district judge in a bench trial, it's a de novo review. It's a totally de novo, from start to finish review on the part of the district court judge. And Harlech is of no safeguard to you here, because the record's undisputed, undisputed that that report was given to your client, and you could respond before a district court judge. And so the district court judge, in making the analysis on these five different assertions, essentially rejected your client's arguments after a two-day bench trial, making credibility findings, which a district court judge all the time in bench trials. Excuse me, after a two-day bench trial? Well, I mean, how long? I'm sorry if I'm mistook. How long was the bench trial? I'm sorry. An hour. An hour. It was an hour. Okay. Maybe it's an hour. Whatever. Okay, but that's a point well taken by you, but quite frankly, there are I guess my question is, what is the basis for you to suggest that a de novo review is somehow limited because it's an ERISA dispute? Because the claimant is not there, and the claimant is not given the opportunity to raise arguments raised for the first time by the district judge, specifically. I think one of the most important things here is it appeared that the district court focused on the one or two sentences in Dr. Blacho's report that maybe, maybe voice activation software might assist her. He said he thinks that's reasonable. But in my client's response on the appeal, she submits a I went to my supervisors with the letter from my doctor saying I couldn't type, and if I couldn't be modified, if I couldn't be modified or accommodated, I can't work. Well, I'm trying to get to the accommodation point. I understand your point on accommodation, and indeed, I think the record is probably devoid of evidence that voice software was available, quite frankly. But the point is, is that with respect to the credibility findings here, there was admissions by your client in the record that she was exercising for six hours a week, if not seven hours a week, at a moderate to strenuous level, okay? That's in the record, and that's part of what was the basis of the district court's judge as to her credibility. Once again, clear, Your Honor. What the record shows is that she was walking a little less than an hour a day. She had been biking, but she stopped. But she was walking a little less than an hour a day. Well, the district court judge also mentioned her failure to mention her orthopedic issues to a physician four days before she quit her job. Yes. Okay, isn't that a fact? It is a fact, but there are facts that have to be looked at to determine if they're reasonable. My client went in to a brand new internist she saw for the first time for tinnitus or tinnitus. This is a Kaiser doctor. I'm not sure if you're familiar with Kaiser, where it's part of a large system. All the records are electronic. So she's going in for tinnitus, not for arm pain. She assumes he has the records, and it's not relevant to that one single appointment. He is making leaps of faith that are reasonable. Notice he says that she got a Botox treatment for her lips, and that people who are disabled, women who are disabled, would not seek cosmetic treatment. It's not credible. I mean, I think that demonstrates that the credibility findings were not. When an insurance company sends somebody out for tinnitus, should the court be looking to say, well, I'm going to find something in there that was never raised by the insurance company? The insurance company's denial letter said, as part of it, they quote from Dr. Vellaccio's report, and they say, by the way, ergonomic equipment is readily available. It ignores the fact that she had received ergonomic equipment, which is separate by law from voice-activated software, and it failed. We don't, this court doesn't need to just rely upon the district court's reasoning as to the disability finding on the matter of voice-activated software. The more fundamental question is the matter of the court's determination of credibility. I understand the argument you're making as to accommodation, but the case is much more than just the issue of accommodation with potentially voice-activated software. Well, Your Honor, due respect, I would disagree to the extent... What is the standard to be applied here, in not entitled to enhanced deference following a bench trial? That's essentially your argument, correct? No, no. My argument is the district court failed in a number of ways to follow binding Ninth Circuit precedent. The district court put on an enhanced standard of objective findings, which is contrary to Ninth Circuit law. The liberty policy at issue, now Lincoln, but it was liberty when it was issued, has no reference to objective findings. Other liberty policies do, but the court said, I want to see objective evidence. Well, in Safon and Deamer, the court has said, you can't deny a disability claim where there's objective evidence of an underlying cause, but not objective evidence of the symptomology. What the court is saying is, I don't believe she's in as much pain as she says she is. Her doctors believe it, her employers believe it, the IME doctor believes it, but the district court doesn't. Let me ask you this. I'll give you some time for a rebuttal. What is the relief you're seeking? Well, suppose we agree with you that the district court went beyond what we would normally think of a de novo review of a record decision. What are you court could have done is had, because I insist that he based his findings on the voice activated software, because without that finding, there's no way to find her anything but disabled, based upon the defendant's vocational that says she needs frequent, ability to frequently keyboard, the doctor, the IME doctor says she can only keyboard occasionally, and her employer that says she has to keyboard 5% of the time. So, I would say that a finding by the district court, that's reasonable, she can do it, without any basis to know whether the employer could provide it, or the employer would provide it, is clear error and unreasonable. That sounds like then it should be remanded back to the employer. Well, I would disagree with that. The insurance company, whoever done it, the plan administrator. First, I would say that the modification or omission language is an exclusion or limitation, and it's the insurer's obligation to prove that. They didn't. My client puts in a declaration saying, I went to my employer, I asked for accommodations, they said no. No matter whose burden it is, and I do think it's their burden, but no matter whose burden it is, I would say no. We met that burden, and they do nothing. And I would like to point to a couple of things, and I know I'm running over my time, but, I'm sorry. I said I'll give you some time for rebuttal, but make your point. My point is, if you look at, I have to find it, the application that Lincoln sends to, it's at the record at 1377. This is the employer additional information form, and I'll note it's an eight-page form, but only one page has any writing on it. The following seven are blank. It says nothing about accommodations, modifications, omissions, nothing. If this is important to Lincoln to know, don't they bear the burden of asking the employer? The insured says, in their appeal, I cannot be accommodated. My employer says no. And Lincoln just accepts it. So, my law firm did the appeal. We put together the declaration saying we can't be accommodated. How are we to know that we have to do more than that, when Lincoln says nothing? Are we supposed to know when we get to court that the district court is going to do this, say this to us? Got the point. I'll give you some time for rebuttal, but let's hear from Lincoln. We can't hear you, Ms. Holmstrom. I'm on mute. Thank you, and may it please the court, Christina Holmstrom on behalf of Lincoln Life Assurance Company. And in 1999, an en banc panel of this court set forth the standard for a de novo review of an administrative record in the case of Kearney v. Standard, and it absolutely is exactly as Judge Selna stated. Anticipating that the review would be entirely based on paper in most cases, the case is entirely based on paper. The Kearney court said the district court will be asking a different question than in summary judgment as he reads the evidence, not whether there is a genuine issue of material fact, but instead whether Mr. Kearney is disabled within the terms of the policy. In a trial on the record, a judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true. And that's exactly what Judge Selna did here. And it doesn't matter – first of all, Lincoln did give Ms. Collier, Dr. Vlachos's report, which did call her credibility into question, but it doesn't matter what Lincoln did or didn't say during the administrative process because the court gave Lincoln no deference as is appropriate in a de novo review. And this court has previously held that it's extremely important for a district court in Judge Selna's position to thoroughly review the record and come to its own conclusions. In the case of Silver, which the parties have cited, Silver v. Executive Carlesian Long-Term Disability Plan, the Ninth Circuit was very critical of the district court for simply adopting the reasoning of the administrator without conducting its own thorough analysis. So Judge Selna was following this court's guidance on conducting his own review of the administrative record. And based on that review, Judge Selna decided that Ms. Collier was actually entitled to less credibility than even Lincoln was giving her by relying on Dr. Vlachos's report. – Counselor, can I ask you – I just – the credibility issue seems to me somewhat beside the point, given the finding of Dr. Vlachos, that, you know, it doesn't seem like it's disputed that she – whatever the extent of her pain, the plaintiff here cannot type frequently. And that is a requirement of the position. So am I wrong in this? I mean, is there a basis to doubt the finding that she's not able to type frequently, given her condition? Correct. Judge Selna determined that Dr. Vlachos, as well as Dr. Heronian, relied too heavily on Ms. Collier's subjective complaints. And when you're using a colloquially erroneous standard, it is completely within the province of the district court to determine how to weigh evidence, even if that evidence is paper instead of testimony. And that comes from the Anderson v. City of Bessemer City case, and the Supreme Court was explicit, where there are two permissible views of the evidence. The fact finder, Judge Selna's, choice between them cannot be clearly erroneous. I would have assumed, though, that even on de novo review, the district court is limited to reviewing the stated bases that the insurer gave for denying the claim. What authority do you have that says otherwise? The Silver case and the Kearney case that I talked about, just as Judge Selna was free to say, I disagree with how Lincoln interpreted Dr. Vlachos' report, or say Lincoln over relied on Dr. Vlachos' report, Judge Selna was within his discretion to say, I think Lincoln gave too much credit to Dr. Vlachos' report because Dr. Vlachos relied on subjective symptoms too much. That was absolutely within his fact-finding province, and it's not the role of the appeal court to second-guess that, and that applies more broadly. Yes, I'm concerned, though, that I thought the rule was pretty clear that the insurance company is not permitted, once it gets to district court, to make up new grounds that it never asserted during the administrative process. So new bases for denying the claim. You're kind of limited to the reasons you gave the claimant during the administrative process. If that's true, I don't see how, even under de novo review, the district court can step in and make up its own reasons that the insurance company never gave. That seems to me fundamentally unfair to the claimant. At the very least, I would think here, the case would need to be remanded back so that the plaintiff can have an adequate opportunity to bolster the record with whatever is needed to meet this new ground that's been asserted for the first time. Well, Your Honor, it wasn't just a surprise to Ms. Collier that her credibility was in question. She argued extensively in her trial briefing that she was credible and her complaints were credible, and that was very much teased out before the district court. And again, the court is tasked with reviewing the record as a whole. If the record is undeveloped due to a regulatory violation, which did not occur here, there's a remedy for that. The court can supplement the record under mongolozo and apeta. But the district court was satisfied within its discretion that the record was sufficient for de novo review, a complete de novo review, and then in its further discretion, made findings a fact. And there are two alternative bases to uphold the district court's decision here. There were two reasons that Judge Selna affirmed Lincoln's decision. First, Judge Selna determined that the evidence didn't actually show that Ms. Collier had the typing restrictions that Dr. Vlachos and Dr. Hironian assumed she did. Secondly, Judge Selna was convinced that the voice-activated software does, in fact, exist as a reasonable modification to her occupational duties. And again, this was in Dr. Vlachos's report that was sent to Collier. Not really. That's my problem. I look at the appeal denial letter, and yes, there's a long block quote in which a single sentence from Dr. Vlachos's report, there's a reference to, I think it says voice-activated software might or might be of assistance or something like that. But I don't see anywhere in the letter where the insurance company is asserting that as the basis for denying her claim. And that's my problem. If you're now trying to defend the district court's decision on the ground that there was this accommodation that was available, the record is completely undeveloped on that front. And it's not surprising because I don't think the claimant was ever put on notice that that was the basis for your client's denial of her claim. So I will address the merits of this, but this goes into weighing evidence, which isn't appropriate in the clear error analysis. Second of all, there is evidence in the record that Dr. Vlachos believed that the voice-activated software would accommodate any restrictions that Ms. Collier felt she had as to using her hands. That is in the record. Ms. Collier provided a 27-paragraph affidavit responding in detail to many parts of the IME and chose not to address that. She also chose not to address it at the district court level at all until oral arguments. Tell me what you're pointing to in Dr. Vlachos' report other than the one sentence that's block-quoted in the appeal. Is there something more about voice-activated software? That's what's in there, and it does. But she doesn't need to go on for five paragraphs about voice-activated software. It's technology that is readily available, and Judge Selma is able to understand that from his life experience. For example, there isn't an additional piece of vocational evidence that Lincoln was obligated to go out and get as part of its appellate review if it's common sense that this technology would be available. And I'm going to give you an example of that. One of the things that Ms. Collier said her job was required was for her to hold the phone on her shoulder while she tilted her head. Now, an accommodation for that would be a headset, just like I'm wearing. If Dr. Vlachos had said in her IME report she doesn't have to tilt her shoulder to the side because a headset is available, and then we sent that IME report to Ms. Collier, she would be on notice to say, oh, no, my particular occupation for some reason doesn't allow for that. And likewise, Judge Selma would be within his rights to say, okay, I live in the world. I understand that headsets are available. There's sufficient evidence here for me to, in my job as the fact finder, determine that this is the conclusion I'm reaching. And this court can't second-guess that as long as it's plausible, which is what the Supreme Court has said repeatedly and forcefully, even when it concerns an administrative record. Furthermore, the Ninth Circuit does recognize relief for the claimant if she feels like the record was undeveloped due to a regulatory error. Here she claims it was a regulatory error. We violated the regulations by not providing her with more notice about the voice-activated software. It was very clear by the time we went to litigation that this was going to be an issue. She never sought to supplement the record. She didn't even mention it in most of her trial briefing. She briefly touched on it at oral argument. Those are the remedies available to her under ERISA, and this court can't go beyond that. Ms. Holstrom, can I just interject a question here with this technology issue? Sure. You know, I find it interesting that as a district judge that you argue that, well, you know, it's within the judge's common experience, and he can rely on that to make a finding a fact. I mean, that's news to me. I mean, I never did that one. I don't think I ever did that when I was a trial judge. What record evidence is there that shows that by voice-activated software, she would be able to do the particulars of her job? Well, Your Honor, if Judge Selma believed that the record was deficient as to that, he had discretion to examine the record. That's not my question. I didn't ask you that. I asked you what evidence in the record is there that shows that this possible voice-activated software would allow her to do the particulars of her job. That's my question. Where in the record is that evidence? Well, there's Dr. Vlachos's IME that says that. And I heard one sentence. And the appeals specialist considered it, and again, based on their experience doing their jobs and understanding disability claims, determined that that was reasonable to accept absent, you know, an additional vocational opinion. Okay. So there really is no evidence that explains how this voice-activated software would allow her to do the particulars of her job. And she was a solicitor, I guess. She sold insurance for AAA to potential customers, right? Yes. My question is, what evidence shows that the voice-activated software would allow her to carry out those duties? There's the evidence I talked about, and I understand that this court thinks that evidence is scant, but Judge Selma did not. That's because he has all this sort of general knowledge about technology. As long as his findings of fact are plausible, it's this court's job to uphold them. It's not this court's job to reweigh the evidence. Again, there were avenues available to both Judge Selma and Ms. Collier if they thought additional evidence was needed on this accommodation. But this misses the prominent point, which is that Judge Selma was not convinced on this record that the restrictions on typing were even supported. And that absolutely was based on his own careful weighing of the evidence. And that's within what Kearney says he was supposed to do. Well, it appears to me that, Ms. Holmstrom, if I can, that as I understand it, even reading the plan to include an accommodation provision would ignore the express provision that an employee is disabled if she's unable to perform substantial and material acts, quote, I think it's in the policy, with reasonable continuity in the usual and customary way, correct? That refers to her occupational duties, and that's to distinguish an occupation from a job. That's right. So, for instance, as an insurance agent, if her specific employer required her to take out a bag of trash every night that weighed 50 pounds, that would be how she performed her job, but that would not be how her occupation is performed in the usual and customary way in the general workforce. So that's what that language gets at. The policy is very clear that an occupational duty can only be substantial and material if it cannot be reasonably omitted or modified. So, again, here, going back to my headset example, if talking on the phone was an occupational duty of an insurance agent and, you know, the agent had some disability where she couldn't hold the phone to her neck by tilting her head, an accommodation could be made to put a headset on her. And that would mean that tilting her head as opposed to being on the phone was not a substantial and material duty of the occupation. And I do want to hit for just a moment counsel's contentions that just because her own employer refused to accommodate the request that she not be able to type at all, that she's somehow disabled. This isn't a test about what her specific employer would or would not accommodate. This is a test that looks at what are the duties in the national economy of the occupation and can they be reasonably omitted or modified. A good example of that would be the recommendation for a sit-stand desk. Again, something that's readily available and we all know that. Just because her specific employer said, no, we're not going to do that for you, that doesn't mean that she's established disability under the policy. She needs to establish that the occupation as a whole would not, for some reason, allow her to work with a sit-stand desk. It isn't the specific employer. It's the occupational duties in the national economy. And I also want to briefly touch on the remedy of remand because it seems to be suggested that this should be remanded back to the claim administrator, which is Lincoln. And in order to give that kind of a remedy, you have to show some violation either of the statute, ERISA, or of the Department of Labor regulations. And my authority for that is the Black and Decker v. Nord case. That's a case that ultimately went up to the Supreme Court because courts were interpreting ERISA as requiring administrators to defer to a treating physician, a rule borrowed from Social Security. And the Nord court said, no, unless something is clear in the statute or in the Department of Labor regulations, it's not imported into ERISA and we can't give a remedy for it. Here, there has been no regulatory violation. If there had been, the appropriate remedy would have been to supplement the record under Mongaluzo and Apeta. That wasn't even something that was broached at the district court level. Let me ask you this, then. If you think that remand is entirely inappropriate, if we were to disagree with you and think that the district court erred, then I guess what you're telling us is we should just tell the district court to enter judgment in favor of Ms. Collier. No, Your Honor. I'm talking about remand to the claim administrator as opposed to remand to the district court judge. And I think what you open up, if you do any kind of remand here, is allowing district courts to substitute their own judgment as to every step of the process in an ERISA case and send everything back on remand just because they might have done something different. And that's absolutely not what ERISA contemplates. And those decisions would be basically insulated from appellate review because remand orders aren't considered to be final orders under ERISA, so this court would never get the chance to weigh in on that. Here, the district court opinion did exactly what it was supposed to do under Kearney. And under existing Supreme Court law, it's not this court's job to second-guess those factual findings. There's a 35-page opinion giving very detailed reasons for those factual findings, and this court should uphold. Okay. Unless the court has more questions. Thank you, Ms. Holstrom. Two minutes. Mr. Starr, do you have any questions the court would like me to respond to? If I may be so bold, I think this decision here requires a published decision. There's a number of unanswered questions. First, we've briefed the issue. We believe the burden is on the defendant to show modifications or omissions would have been reasonable. They say, no, it's our burden. If it's their burden, they clearly didn't meet it. As the court has said, there is nothing in the record that shows a voice-activated software would work for this individual. I mean, life experience? I bet we've all been into a AAA office where their salespeople are working in a bullpen with noise everywhere. It's not in the record, I'll admit. We would say voice-activated software would not work for her. We have no idea if the employer would accommodate her, whether the employer has the ability to service voice-activated software. The judge just made this decision. It sounds reasonable to me, so plaintiff loses. She was sandbagged. It was not brought up beforehand. It's in Dr. Vlachos' IME, and they block-quote it, but when they come time to deny it, what they say is ergonomic equipment is readily available. So that had been tried and failed. What's your response to your opponent's argument that you, by the time you got to the district court, certainly, you knew now that this issue of voice-activated software was going to be in play and that you could have, if you thought it was necessary, moved to supplement the record? What's your response to that? Your Honor, we didn't know that the voice-activated software was going to be at play until we got the court's tentative decision on a Friday. I tried to submit a brief over the weekend and was chastised for the improper submission of a brief over the weekend. We did not know anything that voice-activated software was going to be a defense until we got to trial. So we had no opportunity, none. Tried to argue it at trial. It got me nowhere. As I said, I think the court has to decide whose burden this is, because Lincoln certainly failed, having been advised by my client that her employer would not accommodate her. My colleague's response said, she has to go to every employer in the world to see if they'd accommodate her is ludicrous. Lastly, Kearney came out long before Harlech. I think this court needs to say whether trial judges are bound by Harlech the same way that insurance companies are to avoid sandbagging insurance who don't get to come to court to testify. Okay. Thank you, Your Honor. Thank you, Mr. Cantor, and thank you, Ms. Holstrom. The matter is submitted at this time, and that ends our session for today. All rise. Court is adjourned.
judges: PAEZ, WATFORD, Bennett